## HAMPSON v. FALL ET AL.

REAL ESTATE, ACTION TO RECOVER.—*Defendant Claiming Equitable Title.* —*Making New Parties.*—In an action by one claiming the legal title to real estate, to recover possession and quiet title, a third person, claiming an equitable title thereto, may, on a proper showing, be made a party defendant.

SAME.—*Lands Purchased by One with Moneys of Another.—Implied Trust.— Mortgage by Holder of Legal Title.—Sheriff's Sale to Another.—Notice.— Counter-Claim.*—In an action to recover, and quiet title to, real estate, a defendant filed a counter-claim, alleging that, upon his enlisting in the United States army, he and his mother had agreed that all moneys remitted by him to her should be invested by her in real estate for him; that, pursuant to such agreement, he had remitted to her certain sums of money, with which she had purchased the real estate in question, but had

taken the title thereto in her own name; that, without his knowledge or consent, she and her husband had mortgaged the same, to secure the husband's debt, to one who had notice of the trust; and that the plaintiff claimed title only under a sale on foreclosure of such mortgage.

*Held*, on demurrer, that the counter-claim is sufficient.

SAME.—*Foreclosure by Endorsee for Value and Without Notice.*—*Trust Implied Against Married Woman.*—On the trial of such action it was established, that the allegations of the counter-claim were true; that the deed to the mother had been duly recorded; that the mortgagee had taken the mortgage with notice of the defendant's claim; that the mortgagee had assigned the mortgage debt to the plaintiff and another, for value, but without notice of the trust; and that the plaintiff, on foreclosure of the mortgage, had purchased the realty at a sheriff's sale, and had received a sheriff's deed therefor.

*Held*, that there was an implied trust in the land in favor of the defendant, as against both the grantee and mortgagee, but that the plaintiff, having no notice thereof, is not bound thereby.

PRACTICE.— *Uncertainty in Pleading.*— *Motion.*— *Demurrer.*—Mere uncertainty in a pleading can be reached only by motion to make certain, and not by demurrer.

SAME.—*Instructions.*—*New Trial.*—*Assignment of Error.*—*Supreme Court.*—Error in giving instructions to a jury is ground for a new trial, but is not a proper assignment of error, in the Supreme Court.

From the Jennings Circuit Court.

*A. G. Smith*, for appellant.

*J. Overmyer* and *D. Overmyer*, for appellees.

PERKINS, J.—Henry Hampson sued Thomas Fall in an action to recover possession of, and quiet the title to, certain real estate, viz.: "Ten acres off of the south side of the north-east quarter of the south-east quarter of section thirty-three, in township seven, range eight; also lots numbered forty and forty-one in Peabody's Addition to the town of North Vernon, in Jennings county, Indiana."

On proper showing William Fall was made a codefendant.

Thomas Fall answered in general denial.

William Fall answered in general denial, and, in a second paragraph, by way of counter-claim, a statement of which we copy from the brief of appellant:

"The second paragraph of answer and counter-claim

alleges, that, in the year 1863, appellee entered the armies of the United States for the term of three years, and that, at that time, there was an understanding had and an agreement made between appellee and his mother, Jane Fall, by the terms of which it was agreed, that whatever moneys appellee could save he should send to his said mother, by her to be invested in real estate for him ; that, in pursuance of said agreement, during the years 1863-4-5, appellee sent his mother sums of money amounting in the aggregate to $600, with which she bought lot 40 and paid $150 toward lot 41 and $100 toward the ten-acre tract in complaint mentioned ; that the said Jane Fall took the title of all of said real estate in her own name, and on the 17th day of May, 1869, without appellee's knowledge or consent, mortgaged said real estate to Smith Vawter to secure the payment of her husband's debt, and that Smith Vawter at that time had notice of the existence of the trust set up in this paragraph—with the further allegation, that appellant acquired his title by a foreclosure of said mortgage and sale of the premises therein mentioned, upon execution, to pay said debt, etc. Upon this statement of facts appellee asks to be decreed the owner of lot 40 and have his interest determined and set apart in lot 41 and the ten-acre tract of land. To this paragraph a demurrer was overruled, and exception reserved by appellant."

He adds: " The whole defence of appellee to this action is presented in this paragraph of his answer. It does not come within either of the exceptions or subdivisions of the eighth section of the statute of frauds."

Reply in denial. Trial by jury. Verdict as follows :

"We, the jury, find for the plaintiff, as against the defendant William Fall, as to the ten acres of ground and lot number forty-one ; and we find for the defendant William Fall, against the plaintiff, as to lot number forty ; and we find for the other defendants, that they were not

in possession of either of the tracts of land in controversy, at the commencement of this suit, and have not been since.

"THOMAS OWEN, Foreman."

" The other defendants " had disclaimed.

A motion by the plaintiff for a new trial was overruled, and judgment was rendered on the verdict.

The appellant assigns the following as errors:

1st. In allowing appellee to be made a party to the suit;

2d. In overruling appellant's demurrer to appellee's second paragraph of answer and cross complaint;

3d. In giving the 1st, 2d, 4th and 6th instructions to the jury; and,

4th. In overruling appellant's motion for a new trial.

As this suit sought to quiet the title to the land in question, and also to recover possession, and as, in this suit, title might be quieted, it seems to us it was proper to admit William Fall as a defendant to the suit. He claimed the land by an equitable title.

As to the second assignment of error, we think the second paragraph of answer, by way of counter-claim, was sufficient on demurrer. It might have been subject to a motion for an order to make it more certain.

The third assignment of error alleges matter that might have been a ground of a motion for a new trial, but can not be assigned in this court as error.

The fourth assignment of error calls for a statement of the facts of the case as proved by the evidence: In 1863, Thomas Fall and Jane, his wife, resided in North Vernon, Indiana. In that year, William Fall, a son of said Thomas and Jane, then of the age of fifteen years, with the consent of his parents, volunteered to serve in the army of the United States, was accepted and went South. On leaving home he made an arrangement with his mother, Jane, by which he was to send to her the money he might receive in the Gov-

ernment service, and she was to hold or invest the same for him in North Vernon real estate. His mother received from him, under this arrangement, some six hundred dollars or more, and with it purchased the real estate in question in this suit, but took the title in her own name instead of that of William. Subsequently she joined with her husband in a mortgage of said real estate to Smith Vawter, to secure a debt of about one thousand dollars, evidenced by four promissory notes, due, severally, in one, two, three and four years from date. The first of the series of said notes Vawter transferred, for value, to Edwin R. Wilson, and the remaining three, with the mortgage, to Henry Hampson, the appellant in this case. The notes and mortgage were not paid. Wilson and Hampson foreclosed the mortgage, and Hampson purchased the real estate mortgaged at a sheriff's sale thereof, on the decree of foreclosure, and in due time received a deed from the sheriff. The sheriff's sale was regular. The evidence that Vawter had notice of the equitable claim of William Fall is very unsatisfactory, but, as the jury found for William, we must, in considering the case, hold Vawter a mortgagee with notice. The deed to the property mortgaged was on record in the name of Jane Fall, as grantee, and she and her husband were in possession; and it is not claimed by any one that either Wilson or Hampson had any notice that said Jane was not the absolute owner. They had no notice of William's equitable title. It is undisputed that the real estate was purchased with the money of William.

On the title thus acquired, Henry Hampson prosecuted this suit to quiet that title.

The legal questions arising, we proceed to consider and decide.

Where the trustee of a party purchases land, and takes the title in his own name, and pays for it with the money of the *cestui que trust,* such trustee holds such land, by im-

plication, in trust for the *cestui que trust* whose money was used to pay for it; and this, even though the trustee be a married woman. 1 Perry Trusts, sec. 48; *Blair* v. *Bass*, 4 Blackf. 539; *Fausler* v. *Jones*, 7 Ind. 277; *Resor* v. *Resor*, 9 Ind. 347; *Tracy* v. *Kelley*, 52 Ind. 535; *Parmlee* v. *Sloan*, 37 Ind. 469; *Brannon* v. *May*, 42 Ind. 92; *Cook* v. *Tullis*, 18 Wal. 332; 1 R. S. 1876, p. 916, sec. 8; 1 R. S. 1876, p. 504, sec. 4.

The land in question in this suit, then, was conveyed by such a trustee, by way of mortgage, to Smith Vawter, and he having, as we have seen, at the time, notice of the trust, his title was affected by it. But it is enacted in this State, and it was the law before the enactment, that "No such trust, whether implied or created, shall defeat the title of the purchaser for a valuable consideration, and without notice of the trust." 1 R. S. 1876, p. 915, sec. 2. And "A purchaser without notice from a purchaser with notice, is protected; for his own good faith is a defence, and the bad faith of the vendor, like the bad faith of the original trustee in making the sale, can not injure an innocent party. So a purchaser with notice from a purchaser without notice is protected, not on his own merit, but on the merit of the innocent purchaser; for, if such purchaser could not sell the estate, he would be deprived of one of the valuable attributes of his property; but if the property comes back to the defaulting trustee, the trust will reattach to it, and a similar principle prevails at law. But in case a trustee sells an estate vested in him for a charitable use, the purchaser will be bound by the trust, though he has no notice; and so of an innocent purchaser from the first purchaser; in other respects purchasers of estates devoted to charitable uses are subject to the same rules that govern the purchase of other trust estates." 2 Perry Trusts, sec. 830. *Brown* v. *Budd*, 2 Ind. 442. The purchase of Hampson, the appellant, falls directly within these legal principles, if the sub-

ject-matter of his purchase was within them.   We think it was.   Chancellor WALWORTH remarks, in *Keirsted* v. *Avery*, 4 Paige, 9, as quoted in *Glidewell* v. *Spaugh*, 26 Ind. 319, that "It is now settled that a judgment lien, being merely a general lien on the land of the debtor, is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the docketing of the judgment. And the court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate."

But, in the case at bar, it was not a general judgment lien that the appellant purchased; it was a specific, a mortgage, lien, created by the act of the person whom the public records showed to be the legal owner, and who was in possession of the property, the real estate mortgaged. The mortgage was a conveyance of an interest in that real estate, and the appellant purchased that mortgage, the interest in that real estate which it conveyed, in good faith, relying on the public record, and the possession of the mortgagor, for title, and paying for the property a valuable consideration, and without notice of any trust.

We think the purchase falls within the provision of our statute above quoted.   Such being the case, the court should have sustained the motion for a new trial.

The judgment is reversed, with costs; cause remanded for another trial.